628 So.2d 192 (1993)
Terry LaPRARIE, Appellee,
v.
PONY EXPRESS COURIER, et al., Appellants.
No. 25,350-CA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
Writ Denied February 25, 1994.
*193 Mayer, Smith & Roberts by Frank K. Carroll, Shreveport, for appellants.
James D. Caldwell, Shreveport, for appellee.
Before NORRIS, STEWART and WILLIAMS, JJ.
WILLIAMS, Judge.
An employer and its insurer appeal an award of worker's compensation benefits. We affirm in part and reverse in part.

FACTS
Plaintiff, Terry LaPrarie, was hired by Pony Express Courier Corporation (Pony Express) as a courier/driver in April 1991. On September 4, 1991, during his regular work hours, plaintiff was assaulted on the Pony Express premises by Billy Liner, a fellow employee. As a result of this altercation, plaintiff suffered a fractured vertebrae and underwent cervical fusion.
Plaintiff filed suit for worker's compensation benefits and medical expenses. During the trial before the hearing officer, Pony Express argued that LaPrarie's claim for benefits was precluded because the assault arose out of matters unrelated to his employment. The hearing officer found that the assault arose out of matters related to the plaintiff's employment. He awarded the plaintiff temporary total disability benefits, supplemental earnings benefits and medical expenses.
On appeal, Pony Express contends the fight between LaPrarie and Liner arose over matters unrelated to their employment, the payments made to LaPrarie for the lease of his vehicle was improperly included in the computation of his wages, and the award of supplemental earnings benefits was improper.

DISCUSSION
In a worker's compensation action, the employee must establish that his injury was caused by an accident that arose out of and in the course of his employment. LSA-R.S. 23:1031(A). The work-related accident requirement should be liberally interpreted. *194 Williams v. Regional Transit Authority, 546 So.2d 150 (La.1989). An injury occurs in the course of employment when it happens during the time of employment and at a place contemplated by employment. Williams, supra. Liner assaulted LaPrarie during working hours; LaPrarie was waiting in Pony Express' warehouse for the arrival of a shipment when Liner attacked him. Thus, the incident clearly occurred in the course of employment.
Whether Liner's assault on LaPrarie arose out of his employment is a disputed issue. The Supreme Court in Raybol v. Louisiana State University, 520 So.2d 724 (La.1988) stated that the injury or death of an employee arises out of employment regardless of the nature of the difficulty that prompted the attack or regardless of the identity of his assailant, if the employee is clearly in the course of employment because he is actively engaged in the performance of his duties, preparing himself for his work, or taking a short permissible rest from his labors. However, the holding in Raybol has been statutorily limited. Under LSA-R.S. 23:1031(D), an accident does not arise out of employment if "the injury arose out of a dispute with another person or employee over matters unrelated to the injured employee's employment."
The employee has the burden of proving by a preponderance of the evidence that the injury arose out of employment. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). The trial court's determinations as to whether the employee's testimony is credible and whether the employee has discharged his or her burden of proof are factual determinations that are not to be disturbed on review unless clearly wrong or manifestly erroneous. Bruno, supra; Gonzales v. Babco Farms, Inc., 535 So.2d 822 (La.App.2d Cir.1988), writ denied, 536 So.2d 1200 (La.1988). The manifest error/clearly wrong standard of appellate review applies in a worker's compensation action even when the trial court's decision is based solely upon written reports, records or depositions. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987). When a factfinder's finding is based on its decision to credit the testimony of one or two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
At the trial, LaPrarie testified that on the morning of the dispute, Liner approached him demanding the return of a mobile telephone and his money. The telephone in question was not supplied by the employer. LaPrarie testified that he had assumed some of Liner's delivery routes, but Liner continued to be paid for handling the routes. After LaPrarie contacted the New Orleans payroll and routing office to complain, LaPrarie's paycheck was increased by $75.00 and Liner's paycheck was reduced by $75.00. LaPrarie also testified that Liner also declared during his attack, "I'm tired of you calling New Orleans all the time and getting them on my ass. It makes them think I'm not doing my job."
Liner testified that the altercation with LaPrarie arose from a disagreement with LaPrarie over a mobile telephone and bad checks that LaPrarie had written to him.
Ken Griffin, the New Orleans operations manager for Pony Express, testified that LaPrarie had called him after the altercation and informed him that there was "bad blood" between him and Liner and that they had a "personal grievance" with each other.
Rebecca Ferguson, a fellow employee, witnessed the assault. She testified that Liner had been angry at LaPrarie because he had business cards made so customers could contact him if they needed something shipped and could not contact Liner.
The hearing officer found that the assault arose from matters related to LaPrarie's employment. He concluded that LaPrarie had assumed some of Liner's delivery routes but Liner continued to be paid for handling the routes. After LaPrarie discussed this with the individual in the New Orleans office who handles payroll and routes, he began to receive an additional $75.00 in his paycheck and Liner's paycheck was reduced by the same amount. The hearing officer determined that this change in pay was the true catalyst for the assault.
The evidence presented indicates that the altercation between Liner and LaPrarie was *195 at least partially related to and motivated by their employment with Pony Express. Thus, on this record, we cannot say the hearing officer was clearly wrong in concluding that the assault arose out of matters related to employment and awarding worker's compensation.
Appellant complains in its second assignment of error that the hearing officer improperly included payments LaPrarie was receiving pursuant to a lease agreement as wages when it calculated LaPrarie's benefits. The lease agreement between LaPrarie and appellant provides as follows:
From a base factor of $360.00, to be paid for each full day [sic] in which Lessee uses that vehicle, Lessee shall subtract the wages earned by Lessor/employee, whose wage rate is $4.35 per hour, for operating the vehicle on any given day, with the remainder being equipment rent for said day. Said equipment rent shall not be included in calculating benefits, specifically including worker's compensation benefits, to which employee may become entitled. (emphasis in original)
Under the lease agreement, LaPrarie was to receive $360.00 per week for the use of his personal vehicle. He was paid $4.35 per hour for his services. The $360.00 was reduced by the amount that he was paid for his services. Therefore, LaPrarie always received $360.00 per week: he received one check for his services performed at the rate of $4.35 per hour, and a second check for the use of his vehicle, calculated as $360.00 less the amount he received for his services.
Appellant contends the hearing officer should have based his computation of benefits solely on the amount LaPrarie received in return for his services. Appellant asserts the amount LaPrarie received for the rental of his vehicle should not be included because expenses incurred in the use of his truck is a return on capital rather than labor.
The cases cited by appellant involved workers' compensation claimants whose wages were calculated on a unit or piecework basis pursuant to LSA-R.S. 23:1021(10)(d). Here, LaPrarie received $360.00 per week regardless of the number of hours he worked and the expenses he incurred by using his personal truck. The wage that LaPrarie received is more akin to a weekly salary. The variable rental payments, which were not linked to actual expenses, were used as a device to minimize appellant's exposure to worker's compensation liability. Therefore, we conclude the hearing officer was not clearly wrong in determining LaPrarie's weekly wage was $360.00.
In its third assignment of error, appellant contends the hearing officer erred in granting an award of supplemental earnings benefits. An injured employee seeking supplemental earnings benefits has the burden of proving by a preponderance of the evidence that his injury resulted in an inability to earn ninety percent or more of the wages he was receiving at the time of his injury. LSA-R.S. 23:1221(3); Prudhomme v. DeSoto Professional Home Health Services, 579 So.2d 1167 (La.App.2d Cir.1991). If an employee is able to satisfy this requirement, the burden then shifts to his employer to show that the claimant is physically able to perform work that was offered or available in his reasonable geographic region. Prudhomme, supra.
Dr. Marco Ramos, the neurosurgeon who performed LaPrarie's cervical fusion, testified LaPrarie was asymptomatic and had reached maximum medical improvement on June 9, 1992. Dr. Ramos further testified that he did not restrict LaPrarie from doing manual labor. On this record, we conclude the hearing officer was clearly wrong in awarding supplemental earnings benefits. LaPrarie failed to prove that his injury resulted in an inability to earn ninety percent or more of the wages he was receiving at the time of his injury.
For the foregoing reasons, the judgment awarding temporary total disability of $240.00 per week from September 4, 1991 until June 9, 1992 is affirmed. The award of supplemental earnings benefits is reversed.
AFFIRMED IN PART, REVERSED IN PART.