GREENMAN v. PONY EXPRESS

[123 N.C. App. 136 (1996)]

———————

ELLEN LOUISE GREENMAN, Employee, Plaintiff, v. PONY EXPRESS, Employer, and TRANSPORTATION INSURANCE COMPANY, Carrier, Defendants

No. COA94-1156

(Filed 2 July 1996)

**Workers' Compensation § 260 (NCI4th)— vehicle lease payments from employer to plaintiff—no inclusion in calculation of average weekly wage**

The Industrial Commission did not err in failing to include vehicle lease payments received from plaintiff's employer in calculating her average weekly wages under N.C.G.S. § 97-2(5) where plaintiff failed to present sufficient evidence of vehicle operation expenses so as to permit the Commission to determine what portion, if any, of the lease payments should have been included in the calculation.

**Am Jur 2d, Workers' Compensation §§ 418-430.**

GREENMAN v. PONY EXPRESS

[123 N.C. App. 136 (1996)]

Appeal by plaintiff from Opinion and Award entered 16 May 1994 by the North Carolina Industrial Commission. Heard in the Court of Appeals 22 August 1995.

*David Gantt Law Offices, by David Gantt, for plaintiff-appellant.*

*Harrell and Leake, by Larry Leake, for defendant-appellees.*

JOHN, Judge.

Plaintiff appeals an Opinion and Award of the North Carolina Industrial Commission (the Commission). Plaintiff specifically challenges the Commission's decision not to include vehicle lease payments received from her employer, defendant Pony Express, in calculating her average weekly wages under N.C.G.S. § 97-2(5) (1991 & Cum. Supp. 1995). We affirm the Commission's decision.

Plaintiff's compensation arrangement as a courier for Pony Express involved payment of a predetermined weekly rate for running her delivery route; however, plaintiff routinely received this set amount in two separate checks. The first check was designated as "wages" and represented the product of the total hours plaintiff worked multiplied by the minimum wage. The second was denominated payment under a "Motor Vehicle Equipment Lease" (the "Lease"). According to the "Lease," plaintiff was reimbursed for use of her personal truck on her delivery route; in turn, she was responsible for gas, maintenance, and other expenses attributable to that vehicle. The weekly "Lease" check contained the total weekly rate due plaintiff minus the sum received as "wages" in the initial check. Under this payment scheme, the amount received by plaintiff as "wages" was consistently less than that characterized as "Lease" payments.

It is undisputed that plaintiff suffered a compensable injury to her back on 21 May 1991. She requested a hearing before the Commission, contending her average weekly wages under N.C.G.S. § 97-2(5) should be calculated to include not only the sum designated "wages," but also payments received under the "Lease." Following a hearing, the Deputy Commissioner rendered a decision excluding "Lease" payments from plaintiff's average weekly wages. The Full Commission affirmed that decision in a 16 May 1994 Opinion and Award. Plaintiff filed notice of appeal to this Court 6 June 1994.

It is well established that upon appeal from the Commission, our review is limited to two questions: (1) whether the Commission's findings of fact are supported by any competent evidence, and (2) whether those findings sustain its conclusions of law. *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 128-29, 468 S.E.2d 283, 286, *disc. review denied*, 343 N.C. 513, 472 S.E.2d 18 (1996).

We first observe the Commission properly acknowledged that lease payments to plaintiff in *excess* of her actual expenses in maintaining her truck would be includable as income. *See* G.S. § 97-2(5) ("Wherever allowances of any character made to an employee in lieu of wages are specified part of the wage contract they shall be deemed a part of his earnings."); *Baldwin v. Piedmont Woodyards, Inc.*, 58 N.C. App. 602, 604, 293 S.E.2d 814, 816 (1982) ("[E]xpenses incurred in producing revenue should be deducted."); 2 Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation*, § 60.12(a) (1995) ("A car allowance is includable as wage only if it exceeds actual truck, or travel expenses.").

At plaintiff's hearing, there was a dispute as to whether she might attempt to prove her actual operating expenses for the vehicle were less than the amount received as lease payments under circumstances where, by using the standard deduction, plaintiff had claimed on her income tax return that those expenses were greater than her lease payments.

The Commission's findings of fact in this regard included, *inter alia*, the following:

> At the hearing, plaintiff provided only fragmentary evidence of her actual vehicle expenses during the 12-month period preceding her injury. (Some of such evidence related to a period prior to May 21, 1990). This was insufficient to permit the Deputy Commissioner or the undersigned to extrapolate what her actual expenses were in the relevant period. . . . The most reliable information in this record, based on information supplied IRS under penalty of perjury, is that plaintiff operated her vehicle in the 12 months prior to her injury at a net economic loss.

We do not believe a claimant who has utilized the legal standard deduction to report expenses for income tax purposes is barred from subsequently presenting evidence of her actual operating expenses before the Commission. Indeed, this Court has previously intimated that the amount the Internal Revenue Service [IRS] allows

as a deduction from income may not coincide with the actual loss suffered by a taxpayer. *See Baldwin*, 58 N.C. App. at 604, 293 S.E.2d at 816 ("depreciation as allowed by the [IRS] might not coincide with actual depreciation").

However, the only documentary evidence submitted by plaintiff regarding expenses in operating her vehicle consisted of seven gasoline receipts dated the period between 2 April 1990 and 6 April 1990, more than a year prior to plaintiff's injury, *see* G.S. § 97-2(5) (" 'Average weekly wages' shall mean the earnings of the injured employee . . . during the period of 52 weeks immediately preceding the date of the injury . . . ."). Plaintiff also testified she spent "about $50.00 a week" on gasoline. When questioned about any additional automobile expenses, plaintiff simply replied, "Just buying oil, which was like maybe $7.00 or $8.00 because we did all our oil changes, did our tune-ups and everything ourself."

The Commission's finding of fact that "plaintiff provided only fragmentary evidence of her actual vehicle expenses" is supported by competent evidence. *See Pittman*, 122 N.C. App. at 129, 468 S.E.2d at 286. Further, the finding sustains the conclusion of law that plaintiff failed to present sufficient evidence of vehicle operation expenses so as to permit the Commission to determine what portion, if any, of the lease payments should have been included in the calculation under G.S. § 97-2(5) of her average weekly wages.

We note in conclusion that the two check method of compensation at issue herein, *i.e.*, one check designated as wages and the other as a lease payment, has been criticized elsewhere. *See LaPrarie v. Pony Express Courier*, 628 So.2d 192 (La. Ct. App. 1993), *writ denied*, 632 So.2d 765 (La. 1994) (claimant compensated in manner identical to that of plaintiff *sub judice*; court held lease payments "were used as a device to minimize [the] exposure [of Pony Express] to worker's compensation liability" and entire lease payment included in calculation of claimant's average weekly wages). However, as noted above, the record supports the Commission's determination that plaintiff's evidence of her actual vehicle expenses in the year preceding her injury was, at best, "fragmentary." *See Pittman*, 122 N.C. App. at 129, 468 S.E.2d at 286.

Affirmed.

Judges EAGLES and LEWIS concur.