The appealing party has shown good ground to reconsider the evidence. However, upon detailed reconsideration of the evidence, the Full Commission reaches the same result as the Deputy Commissioner, with some modifications and additional findings and conclusions. The Full Commission has determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support the findings of fact, conclusions of law and award. Plaintiff's affidavit dated 27 May 1997 was submitted to the Deputy Commissioner without objection and is part of the evidence of record.
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to the joinder or misjoinder of the parties.
3. Plaintiff suffered an injury by accident on 9 October 1995 and was paid temporary total disability benefits in the weekly amount of $120.23 since that time. It is not stipulated by plaintiff that $120.23 per week was the correct compensation rate.
4. Defendant is self-insured with Kemper Risk Management Services serving as the third-party administrator.
 ***********
Based upon the competent evidence adduced from the record, the Full Commission adopts the findings of fact of the Deputy Commissioner, with modifications and additional findings as follows:
 FINDINGS OF FACT
1. On 9 October 1995, plaintiff was a courier driver employed with defendant. He had been employed with defendant since 24 July 1995, a period of approximately eleven weeks.
2. On 9 October 1995, plaintiff experienced an injury by accident, in which he injured his back, neck and head.
3. As a courier driver, plaintiff owned a van and leased it to defendant under a document entitled "North Carolina Motor Vehicle Equipment Lease." Pursuant to the lease, defendant paid plaintiff weekly at $115.00 per day, or $575.00 per week.
4. Defendant paid plaintiff by two separate checks on two different days. The amount of the first check was the product of plaintiff's hourly wage rate of $4.75 multiplied by the number of hours worked for that week. The other check was calculated to make up the difference between the first check and the remainder due plaintiff under the lease contract for $575.00 per week. Federal and state income taxes were deducted from the first check only.
5. Plaintiff was responsible for maintaining the van by providing gasoline, necessary repairs and upkeep, and providing license tags. Plaintiff was also free to use the van for his own personal use when it was not being operated in the business of defendant. Defendant provided motor vehicle insurance on the van. Plaintiff maintained his own policy of insurance for his personal use of the van.
6. Defendant never informed plaintiff that his employment would be subject to an accountable plan. Defendant did not require plaintiff to turn in receipts documenting his expenses in operating and maintaining the delivery van, nor did defendant ever ask plaintiff to return a portion of the payments made pursuant to the vehicle lease agreement. The vehicle lease agreement made no reference to an accountable plan, nor did it require plaintiff to submit records of his mileage. However, plaintiff regularly submitted records of his mileage to defendant. Plaintiff received a document from defendant at the end of 1995 entitled "Accountable Plan Statement." This document recited the sum of the payments that were characterized in the vehicle lease agreement as payments for the use of plaintiff's vehicle and the total miles plaintiff's vehicle was driven in the business of defendant.
7. Plaintiff had the following business expenses associated with maintaining the van that was leased to defendant: gasoline at $135.03 per week; miscellaneous repair at $20.89 per week; license and title at $1.18 per week; and depreciation at $45.30 per week. Total weekly business expenses amounted to $202.40 per week. Plaintiff's average weekly wage is determined by subtracting plaintiff's total weekly business expenses from his gross weekly income of $575.00 per week. On 9 October 1995, plaintiff's average weekly wage was $372.60, yielding a compensation rate of $248.41 per week.
8. The vehicle lease agreement provided that either party could terminate the lease, with or without cause, by giving the other party twenty-four hours written notice. On 31 October 1995, plaintiff sent defendant a letter proposing additional terms to defendant. Plaintiff required defendant's consent to these additional terms before he would allow defendant to continue to use his van . Defendant refused to agree to plaintiff's additional terms, and requested that plaintiff reclaim his vehicle. Plaintiff retrieved his vehicle from defendant's lot.
9. Following plaintiff's accident, defendant calculated plaintiff's average weekly wage by multiplying the minimum wage ($4.75/hour) times the number of hours plaintiff worked, without considering defendant's "lease" payments to plaintiff under the vehicle lease agreement. As a result, the amount of income plaintiff received from defendant was reduced to $120.23 per week. Plaintiff was unable to continue to make payments on the purchase of the van, and he had to turn it back in to the automobile dealership.
10. Plaintiff generally received his compensation checks in a timely manner.
11. As a result of plaintiff's 9 October 1995 injury by accident, he was unable to earn wages with defendant or in any other employment from 9 October 1995 until 20 November 1996.
12. Plaintiff returned to work on 20 November 1996 and continues to experience a reduction in wages, as he currently works twenty hours per week at $5.25 per hour.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 9 October 1995 an employment relationship existed between plaintiff and defendant and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2.
2. On 9 October 1995, plaintiff sustained an injury by accident which arose out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
3. As a result of plaintiff's admitted injury by accident of 9 October 1995, he is entitled to have defendant pay for his medical treatment for so long as such treatment is reasonably required to effect a cure, give relief, or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
4. Lease payments to plaintiff by defendant in excess of plaintiff's actual expenses in maintaining the van are includable as income in calculating plaintiff's average weekly wage. Plaintiff's use of the standard mileage deduction to report vehicle expenses for income tax purposes does not bar him from presenting to the Commission evidence of his actual operating expenses. Accordingly, plaintiff's average weekly wage on 9 October 1995 was $372.60. N.C. Gen. Stat. § 97-2(5); Greenman v.Pony Express, 123 N.C. App. 136, 472 S.E.2d 227 (1996).
5. Plaintiff provided written notice of his intent to terminate the vehicle lease agreement to defendant by his letter of 31 October 1995. The vehicle lease agreement allowed plaintiff to terminate the agreement with or without cause. When plaintiff retrieved his vehicle from defendant's lot, the vehicle lease agreement was terminated. Whether plaintiff could have continued to receive payments pursuant to the vehicle lease agreement by providing his vehicle to defendant is not relevant to the computation of plaintiff's average weekly wage, and plaintiff's termination of the vehicle lease agreement does not entitle defendant to an offset. N.C. Gen. Stat. § 97-2(5); 97-6.
6. As a result of plaintiff's admitted injury by accident of 9 October 1995, he was unable to earn wages with defendant or in any other employment from 9 October 1995 until 20 November 1996 and is entitled to temporary total disability compensation of $248.41 per week for that period, minus a credit for what defendant has paid to him. N.C. Gen. Stat. § 97-29.
7. As a result of plaintiff's compensable injury by accident of 9 October 1995, he continues to experience a reduction in wages and is entitled to temporary partial disability compensation equal to sixty-six and two-thirds percent (66 2/3%) of the difference between $372.60 and the wages he is currently earning per week, not to exceed 300 weeks from the date of injury. Defendant is entitled to a credit for any temporary partial disability compensation paid plaintiff since 20 November 1996. N.C. Gen. Stat. § 97-30.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his temporary total disability compensation, defendant shall pay plaintiff at the rate of Two Hundred Forty-eight Dollars and 41/100 ($248.41) per week for the period of 9 October 1995 until 20 November 1996, less any amounts already paid under the existing Form 60 agreed to by the parties. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved below in paragraph four.
2. For his continuing temporary partial disability compensation, defendant shall pay plaintiff sixty-six and two-thirds percent (66 2/3%) of the difference between $372.60 per week and the weekly wage plaintiff is currently earning for the period following 20 November 1996 and continuing as long as plaintiff is employed at a weekly wage which is less than $372.60 per week, but not to exceed 300 weeks from 9 October 1995. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved below in paragraph four.
3. Defendant shall pay expenses incurred for the medical treatment of plaintiff, or to be incurred as a result of his compensable injury, to the extent that medical treatment is reasonably required to effect a cure, give relief, or tends to lessen the period of plaintiff's disability.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the compensation shall be deducted from any lump sum currently due plaintiff and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel. By letter of 14 April 1998, the Commission was informed that a dispute had arisen between the law offices of Kaplan, Gilpin Associates, L.L.C., and Anne R. Harris, now associated with the law firm of Donaldson and Black. The fees approved above are awarded jointly to Anne R. Harris and the law firm of Kaplan, Gilpin Associates, L.L.C., to be divided as the attorneys deem appropriate.
5. Defendant shall pay the costs.
 *********** S/ ________________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER