***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Houser, along with the briefs and arguments on appeal. The Full Commission MODIFIES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 10 April 2003 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer on 26 October 1999.
3. On that date plaintiff sustained a compensable injury by accident to his right knee arising out of and in the course of his employment with defendant-employer. Defendant-employer acknowledged this with an Industrial Commission Form 60.
4. On 26 October 1999 the defendant was self-insured with Specialty Risk Services as the Servicing Agent.
5. Plaintiff's average weekly wage is at issue. Pursuant to the Form 60, defendants paid plaintiff benefits at the compensation rate of $559.14 per week based on an average weekly wage of $838.67 per week.
6. Plaintiff's medical records regarding this claim are admitted into evidence as Stipulated Exhibit #1.
7. Plaintiff's employment records are admitted into evidence as Stipulated Exhibit #2.
8. The following Industrial Commission Forms are admitted into evidence as Stipulated Exhibit #3:18, 19, 60(with respect to the right knee), 62, 33 and 33R.
9. Plaintiff's medical expenses are admitted into evidence as Stipulated Exhibit #4.
10. Plaintiff's Second Set of Interrogatories are admitted into evidence as Stipulated Exhibit #5.
11. Defendant's Responses to plaintiff's Second Set of Interrogatories are admitted into evidence as Stipulated Exhibit #6.
12. A letter to plaintiff's counsel from defendant servicing agent is admitted into evidence as Stipulated Exhibit #7.
13. The issues to be determined by this hearing involve whether defendant has properly asserted a credit under N.C. Gen. Stat. § 97-42 against the plaintiff's temporary total disability based on the receipt of salary continuation under a severance package; whether the plaintiff's left knee condition is causally related to plaintiff's compensable injury; and the correct average weekly wage and compensation rate.
 ***********
Based upon all the evidence adduced from the record, the undersigned makes the following additional:
 FINDINGS OF FACT
1. On 26 October 1999 plaintiff was a sixty-four year old male employed by defendant as a salesman. On that date he suffered a compensable injury to his right knee while moving some boxes at work. Defendant accepted the claim as compensable.
2. On 4 November 1999 plaintiff received treatment from Dr. Dixon Gerber, an orthopedic surgeon, who treated plaintiff conservatively until a MRI revealed a meniscal injury. On 17 January 2000 Dr. Gerber performed arthroscopic surgery to repair the torn meniscus in the right knee.
3. On 15 March 2000 plaintiff returned to work but continued to have problems with his right knee. However, plaintiff continued to work up until his job with defendant was eliminated.
4. On 1 February 2001 defendant notified plaintiff his job was eliminated due to company downsizing. Plaintiff received salary continuation, which was not offered to all employees affected by the downsizing. The reason plaintiff received this continuation was in appreciation of his years of service to the company. It was not part of plaintiff's employment contract. Plaintiff received this full salary continuation through 31 December 2001. Plaintiff's resignation officially became effective on 1 January 2002.
5. Due to continuing problems with his right knee, plaintiff underwent a total knee replacement on 18 June 2001. Defendants paid for this surgery. However, plaintiff experienced several complications from the surgery, including deep vein thrombosis (DVT), pulmonary embolism (blood clots in his right leg and lungs), and edema. Plaintiff's preexisting diabetes likely contributed these conditions.
6. DVT affected the vascular structure of plaintiff's right leg and caused swelling and discomfort in this leg. Plaintiff relied more heavily on his left leg or "good" leg.
7. Plaintiff began having problems with his left leg including pain and problems walking. Prior to plaintiff's 26 October 1999 compensable injury to the right leg, plaintiff had some arthritis in both legs. He had also had a previous left knee injury in Texas approximately thirteen (13) years ago. However, this arthritis or injury did not prevent plaintiff from performing his full duties. Now the arthritis in the left leg is so bad that he walks with a cane or walker and needs a total knee replacement in the left knee as well.
8. The greater weight of the medical evidence is that plaintiff's right leg problems aggravated or exacerbated plaintiff's left knee arthritis to the extent that it became symptomatic and is in need of treatment.
9. Among the fringe benefits defendant offered its employees was to match voluntary contributions by employees to their 401(k) account savings plans. Specifically, in the event an employee chose to contribute to his or her 401(k) account, the defendant would match thirty percent (30%) of that employees contributions, up to five percent (5%) of that employees salary. Plaintiff could modify the amount of his voluntary contribution and could choose the investment vehicle in which he placed these funds, and did so on several occasions.
10. Plaintiff, in the fifty-two (52) weeks prior to his 26 October 1999 compensable injury, plaintiff chose to contribute $4,308.44 to his 401(k). In turn, the defendant matched his contribution by thirty percent (30%), in the amount of $646.27. Plaintiff is vested in those contributions. Since plaintiff actually "earned" these amounts in the year preceding his injury they should be counted into the average weekly wage. In calculating plaintiff's average weekly wage at $838.67, defendant omitted the $643.37 in matching contributions made my defendant into plaintiff's 401(k) account during the one (1) year prior to the injury. This matching contribution increases plaintiff's average weekly wage by $12.43 each week ($646.37 divided by fifty-two (52) weeks). This increase to the average weekly wage yields a maximum compensation rate.
11. As the plaintiff was required to drive a significant amount in his position as a salesman, the defendant provided him with a company vehicle. There was no written contract between the defendant and plaintiff with regard to his use of company vehicles. However, in practice, when the plaintiff's use of the vehicle came to an end, he would return it to the defendant and was provided with another one. Plaintiff kept up with the amount of miles he used the car for personal use. Plaintiff's W-2 form from defendant for taxable year 1999 showed that the personal value of the use of plaintiff's company car exceeded the expenses of the vehicle by $442.90. The $442.90 on plaintiff's W-2 form represented income to plaintiff, on which plaintiff had to pay taxes. This income constitutes earnings for purposes of N.C. Gen. Stat. § 97-2(5). The value of the use of the vehicle was not included in plaintiff's prior average weekly wage. Dividing $442.90 by the fifty-two (52) weeks in 1999 produces an increase in plaintiff's weekly wage by $8.52 per week. Multiplying $8.52 by the 42-5/7 weeks between 1 January 1999 and 26 October 1999 yields at least $359.32. This amount alone (not even considering the rest of the previous year) increases plaintiff's compensation rate by the eighty-six cents ($.86) required to reach the maximum compensation rate of $560.00 for 1999.
12. Plaintiff has been disabled since the right knee replacement surgery performed on 18 June 2001 and unable to work. The full salary continuation he received from 18 June 2001 through 30 December 2001 was not due and payable at the time he received it.
13. Plaintiff has not reached maximum medical improvement and is in need of further treatment to both legs.
14. When plaintiff's salary continuation ended on 31 December 2001, defendant reinstated total disability.
15. Defendants are not subject to late fees or sanctions for failing to pay compensation from 18 June 2001 through 30 December 2001 because the defendants paid the salary continuation.
16. Plaintiff is not entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1 because there was a genuine causation question as to plaintiff's left leg and there is no precedent regarding employer contributions to a 401(k) account.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. On 26 October 1999 plaintiff sustained a compensable injury to his right knee arising out of and in the course in the course of his employment. N.C. Gen. Stat. § 97-2(6).
2. As a result of this injury and complications from his right knee replacement surgery in June 2001, plaintiff experiences an aggravation or exacerbation of his left knee. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff's average weekly wage should include amounts from his 401(k) account, which were quantifiable and to which defendant contributed and plaintiff was vested and had control. This totals $646.37 and were amounts plaintiff earned during the year preceding his injury. N.C. Gen. Stat. §97-2(5); Greenman v. Pony Express, 123 N.C. App. 136, 472 S.E.2d 227
(1995); McAnelly v. Wilson Pallet Crate Co., 120 N.C. App. 127,460 S.E.2d 894 (1995); Christian v. Riddle Mendenhall Logging,117 N.C. App. 261, 450 S.E.2d 510 (1994).
4. Plaintiff's average weekly wage should include the value of the car provided to plaintiff in his employment, which exceeded the actual expenses associated with his work use of the car by at least $359.32 in the year preceding plaintiff's compensable injury. N.C. Gen. Stat. §97-2(5); Greenman v. Pony Express, 123 N.C. App. 136, 472 S.E.2d 227
(1995) (quoting 2 A. Larson, The Law of Workmen's Compensation § 60.12(a)).
5. Plaintiff's correct average weekly wage for 26 October 1999 is $859.62, yielding the maximum compensation rate of $560.00 for 1999. This is an eighty-six cent ($.86) increase from the compensation rate plaintiff receives from the defendant. Plaintiff is entitled to a retroactive increase in his compensation rate of eighty-six cents ($.86) for all previous weeks he received benefits and continuing.
6. Plaintiff is entitled to continuing temporary total disability compensation at his compensation rate of $560.00 per week until further Order of the Commission. N.C. Gen. Stat. § 97-29.
7. Defendant is entitled to a credit for amounts paid to plaintiff as a severance package for the period 18 June 2001 through 31 December 2001. N.C. Gen. Stat. § 97-42.
8. Plaintiff is not entitled to sanctions or penalties for failure to pay temporary total disability from 18 June 2001 through 31 December 2001. Plaintiff is not entitled to attorney fees pursuant to N.C. Gen. Stat. §97-88.1.
9. Plaintiff is entitled to have defendants pay all medical expenses incurred by plaintiff as result of his compensable injury to his right leg and the consequences to his left leg, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. §97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay to plaintiff eighty-six cents ($.86) per week difference on all temporary total benefits paid to plaintiff. Such amounts have accrued and shall be payable in a lump sum.
2. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff temporary total disability at a rate of $560.00 per week from 18 June 2001 and continuing until further Order of the Commission. Defendant is entitled to a credit for temporary total benefits already paid and for amounts paid to plaintiff pursuant to the severance package from 18 June 2001 through 31 December 2001. Those amounts have accrued and are payable in a lump sum.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded plaintiff in Paragraph 1 of this AWARD is hereby approved for plaintiff's counsel and shall be deducted from sums due plaintiff and payable directly to plaintiff's counsel. Thereafter, every fourth check shall be directly payable to plaintiff's counsel.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of the 26 October 1999 injury, when bills for same shall have been submitted to the Industrial Commission according to Industrial Commission procedures.
5. Defendant shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER