* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Houser and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act and the jurisdiction of the Industrial Commission.
2. An employer-employee relationship existed between plaintiff-employee and defendant-employer in that plaintiff was employed by defendant-employer on November 19, 1999.
3. On the relevant dates herein, defendant-employer was insured by the now defunct Reliance Insurance Company, but due to defendant-employer's insurance contract, it has not yet reached its deductible for this claim. Should the defendant-employer meet its deductible, the North Carolina Insurance Guaranty Association will become a necessary and proper party to this action as the Successor in Interest of Reliance Insurance Company.
4. All necessary parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
5. Except as discussed in Stipulation (3), all parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
6. Defendants deposed Mr. Steve Farrow after the hearing, and the transcript was received and admitted into evidence.
7. The parties agreed to stipulate to all Industrial Commission forms.
8. The parties did not introduce medical evidence by stipulation or deposition.
9. The issues to be determined are whether plaintiff's perdiem expense allowance should be included in calculating her average weekly wage, and whether there has been an underpayment to plaintiff of total disability compensation.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff began working for defendant-employer on August 13, 1998 as a flight attendant. The first two to two and one-half weeks of her employment were in training. By the first week of September 1998, plaintiff was performing her normal duties as a flight attendant. Plaintiff's domicile, her home airport, was in New Bern.
2. Plaintiff worked consistently in her capacity as a flight attendant for defendant-employer until on or about July 24, 1999, when she was injured in an automobile accident. Due to her injuries from that accident, plaintiff was out of work from on or about July 24, 1999 until November 9, 1999. Because of this period in which plaintiff was out of work, during fifty-two (52) weeks prior to her injury she worked thirty-six and five/sevenths (36 5/7) weeks.
3. On November 9, 1999, plaintiff sustained an injury by accident to her back and neck. This injury occurred during plaintiff's re-certification process for defendant-employer while she was opening an emergency door on an airplane. As a result of her injury claimant underwent surgery on her lumbar and cervical spine.
4. The compensability of plaintiff's injury was accepted by defendants through the filing of an Industrial Commission Form 60, filed on March 1, 2000. Pursuant to this Form 60, defendants began paying plaintiff total disability compensation at the rate of $317.97, based upon an average weekly wage of $476.95. Thereafter, plaintiff requested a review of her average weekly wage, and defendants determined that she was being overpaid and reduced plaintiff's compensation rate to $279.49 effective February 4, 2002. Since that time, plaintiff continued to receive total disability compensation at the rate of $279.49. As of the date of the hearing before the deputy commissioner, plaintiff had not returned to work for defendant-employer, or in any other employment.
5. As part of a collective bargaining agreement between the flight attendants' union and defendant-employer, plaintiff received an hourly wage for a guaranteed minimum amount of flight hours each month, overtime wages for flight hours above the minimum, a taxed per diem, a non-taxed per diem, a uniform allowance, and 401K contributions. The guaranteed minimum flight hours was seventy-two (72). In addition, plaintiff was provided uniforms for which a $15.00 "uniform repayment" was deducted from her pay until she had paid for the uniforms. Of these payments, there is no dispute that plaintiff's regular flight pay, her overtime flight pay, and her 401K contributions are included in her average weekly wage. From November 10, 1998 to July 24, 1999, payroll records show that plaintiff earned $10,581.03 in regular pay, $5,141.75 for overtime pay, and received $147.43 in 401K contributions. This undisputed total amounts to $15,870.21.
6. Plaintiff also received a per diem, which was paid at a rate of $1.35 per hour for each trip hour for all of defendant-employer's flight attendants. Regarding trip hours, when plaintiff left her domicile airport at 10:00 a.m. for a flight and returned to her domicile airport at 10:00 a.m. the following day, plaintiff would be paid the per diem rate for twenty-four hours, which was identified as non-taxed per diem. The non-taxed per diem was reported on plaintiff's payroll records as "PER DIEM NON-TAX." However, the per diem she was paid when she worked on a flight that departed and returned on the same calendar day was reported on plaintiff's payroll records as "MEALS." For the relevant period prior to her injury, plaintiff received $139.85 identified as "MEALS" and treated as a taxed per diem, and $4,332.39 in non-taxed per diem. Plaintiff also received $10.00 per month for uniform maintenance, which totaled $176.00 during this period.
7. Mr. Steve Farrow, Vice President of Flight Operations, stated that the purpose of the non-taxed per diem was to compensate employees for incidental expenses incurred while away from their domicile on flights that did not depart and return on the same day. In addition to the non-taxed per diem, the airline paid for hotel accommodations and transportation to and from the hotel. Although plaintiff testified that she did not spend any money on these trips by eating crew meals and continental breakfasts at the hotel, Mr. Furrow stated that crew meals, which were intended to be snacks, were only provided if a flight was longer than six hours.
8. Although plaintiff acknowledge the taxed per diem was income on her tax returns, she did not declare the non-taxed per diem as income on her tax return. Thus, plaintiff's prior conduct contradicts her current contention that her non-taxed per diem should be considered as income in the calculation of her average weekly wage.
9. Plaintiff admitted incurring expenses on overnight flights, but failed to produce evidence as to the extent her per diem exceeded her actual expenses. Even if the non-taxed per diem was to be considered an income for the purpose of calculating plaintiff's average weekly wage, plaintiff failed to show that her per diem exceeded her actual expenses.
10. Based upon the totality of the credible evidence of record, the undersigned finds that calculating plaintiff's average weekly wage by using her regular pay, overtime pay and her 401(k) contributions, provides the most fair result to the parties. Pursuant to that calculation, plaintiff's average weekly wage on November 9, 1999 was $432.26, which yields a compensation rate of $288.18 per week.
11. Based upon her correct average weekly wage, plaintiff was overpaid and defendants are entitled to a credit.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Payments to plaintiff to reimburse expenses which are in excess of plaintiff's actual expenses are counted as income.Greenman v. Pony Express, 123 N.C. App. 136, 138,472 S.E.2d 227, 228 (1996). In order to count expense payments as income, the burden is on plaintiff to show that her actual expenses were less than the payments made for that purpose. Id. As plaintiff has failed to show that the per diem paid exceeded her actual expenses and constitute real economic gain, the non-taxed per diem may not be counted as income. Id.
2. Based upon the totality of the credible evidence of record, the undersigned find that calculating plaintiff's average weekly wage by using her regular pay, overtime pay, and her 401(k) contributions provides the most fair result to both parties and most nearly approximates the amount which plaintiff would have earned had she not been injured. N.C. Gen. Stat. § 97-2(5). As plaintiff missed work for an unrelated automobile accident during the 52 weeks prior to the accident, the second method of calculating plaintiff's average weekly wage is appropriate, and plaintiff's earnings are divided by the number of weeks remaining after lost time has been deducted. Id. Pursuant to that calculation, plaintiff's average weekly wage on November 9, 1999 was $432.26, which yields a compensation rate of $288.18 per week. Id.
3. As the result of her admittedly compensable injury by accident on November 9, 1999, plaintiff is entitled to have defendants pay her ongoing total disability compensation at the rate of $288.18 per week continuing from the date of this Opinion and Award until such time as she returns to work, or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Based upon her correct average weekly wage and prior overpayment, defendants are entitled to a credit for overpayment. N.C. Gen. Stat. § 97-42.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $288.18 per week continuing from the date of the Opinion and Award until such time as she returns to work, or until further Order of the Commission. This compensation is subject to the attorney's fee approved herein and defendant's credit for overpayment.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
This the 31st day of January, 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING IN PART:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER