FRED WALLACE v. THE MUSIC SHOP, II, INC. AND ROYAL INDEMNITY COMPANY

No. 718IC306

(Filed 26 May 1971)

**Master and Servant § 71— computation of average weekly wage in exceptional case — carpenter who was receiving Social Security**

In computing the average weekly wage of a carpenter who was being employed for less than 52 weeks and whose earnings could not exceed $1680 annually under Social Security regulations, the Industrial Commission properly based its award on the carpenter's actual earnings in the job in which he was injured. G.S. 97-2(5).

APPEAL by defendants from an opinion and award of the North Carolina Industrial Commission filed 17 December 1970.

This proceeding was originally heard before Deputy Commissioner W. C. Delbridge in April 1970. The evidence reveals that on 9 October 1968 the plaintiff, Fred Wallace, age 66, was employed as a carpenter for the defendant, The Music Shop, II, Inc. (Music Shop). While in the course of his employment, the plaintiff, on 9 October 1968, accidentally injured his back, resulting in temporary total disability from the date of the injury until 3 July 1969, and a fifteen percent permanent partial disability since 3 July 1969. Music Shop had employed the plaintiff in September 1968 to remodel its place of business, which was expected to take a little over four weeks to complete. Mr. Wallace was paid at the rate of $2.50 per hour or $100 per week, and up to the date of the injury he had been paid a total of $450.

On cross-examination, the plaintiff testified that in 1967 he had retired from employment with Colonial Stores. After retirement he worked at a number of jobs as a carpenter, and earned the following during the year 1968: S. M. S., Inc., $630; Coastal Builders and Realty, $500; Pearson Building Rental, $7.50; and

---

---

Music Shop, $450, for a total of $1,587.50. The plaintiff was also receiving Social Security retirement benefits, and could earn a total of $1680 without any diminution of those benefits. The following appears in the cross-examination testimony of Mr. Wallace:

> "Q. So, after your retirement in November of 1967 when you started drawing your Social Security benefits, you didn't intend to earn over $1,680.00.
>
> "A. I earn all year all I could make.
>
> "Q. Which was $1,680.00?
>
> "A. No, sir, I worked right on. I drawed Social Security up until that time. If I made $3,000.00, I'd have to quit drawing Social Security."

From an opinion and award of Deputy Commissioner Delbridge compensating the plaintiff on the basis of $32.30 as his average weekly wage, the plaintiff appealed to the Full Commission.

After reviewing the evidence and hearing the contentions of the parties, the Full Commission, on 17 December 1970, filed an opinion and award which contained the following pertinent finding of fact:

> "5. Plaintiff worked for defendant employer at a wage of $2.50 per hour for a 40-hour week and was paid $100.00 per week. He so worked for defendant employer for approximately four and a half weeks and received approximately $450.00 as his wage. Plaintiff's average weekly wage with defendant employer was $100.00. An average weekly wage computed on the basis of the actual wage received by plaintiff in this case is fair and just to both sides."

The defendants excepted to the method of computation as set forth in the quoted finding of fact and from the opinion and award of the Full Commission based thereon appealed to this Court.

*White, Allen, Hooten and Hines by F. Fred Cheek, Jr., for plaintiff appellee.*

*Taylor, Allen, Warren and Kerr by John H. Kerr III for defendant appellants.*

HEDRICK, Judge.

The question presented by the defendants' exceptions is whether the Industrial Commission correctly calculated the employee's average weekly wage. G.S. 97-2(5) sets forth five methods of computation which are as follows:

"(1) 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury . . . divided by fifty-two; but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such fifty-two weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. (2) Where the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. (3) Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the fifty-two weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community. (4) But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

\* \* \*

"(5) In case of disabling injury to a volunteer fireman under compensable circumstances, compensation payable shall be calculated upon the average weekly wage the volunteer fireman was earning in the employment wherein he principally earned his livelihood as of the date of injury." (Numbering ours.)

Obviously, the first and fifth methods prescribed in the statute for computing the average weekly wage of an injured employee are not applicable in this case. The defendant concedes that there is no factual basis for the application of the third method.

Defendant contends that the fact that the plaintiff at the time of his injury was drawing Social Security retirement benefits and his earnings could not exceed $1680 annually, and that he was only employed intermittently, are "exceptional reasons" which make utilization of the second prescribed method unfair and unjust to the employer. We do not agree.

The fourth prescribed method may not be used unless there has been a finding that use of the second method would produce results unfair and unjust to either the employee or employer. *Liles v. Electric Co.,* 244 N.C. 653, 94 S.E. 2d 790 (1956). Thus, since the Commission in the instant case made a finding that its use of the second method produced results that were "fair and just to both sides," our review is narrowed to a determination of whether the Commission's finding and conclusion in this regard is supported by the evidence.

In *Liles v. Electric Co., supra,* Bobbitt, J., now C.J., speaking for the Court, stated:

"The words 'fair and just' may not be considered generalities, variable according to the predilections of the individuals who from time to time compose the Commission. These words must be related to the standard set up by the statute. Results fair and just, within the meaning of G.S. 97-2(e), consist of such 'average weekly wages' as will most nearly approximate the amount which the injured employee *would be earning* were it not for the injury, in the employment in which he was working at the time of his injury."

In *Barnhardt v. Cab Co.,* 266 N.C. 419, 146 S.E. 2d 479 (1966), the North Carolina Supreme Court held that it would be unfair to the employer and his insurance carrier to compute the average weekly wage of an injured employee by combining his earnings from the employment where he was injured with his earnings from other employment. The Court reasoned that it would be unfair to the employer and his insurance carrier to burden them with a liability out of proportion to employer's payroll and the insurance premium computed thereon. Sharp, J.,

speaking for the Court, said: "It seems reasonable to us that the Legislature, having placed the economic loss caused by a workman's injury upon the employer for whom he was working at the time of the injury, would also relate the amount of that loss to the average weekly wages which that employer was paying the employee."

It is our opinion that the reasoning of the Court in Barnhardt in determining what was *unfair* to the employer can be used in the instant case to determine what *is fair* to the employer. By computing the plaintiff's average weekly wage from his earnings from the employment in which he was injured, the employer's liability is in direct proportion to his payroll and the insurance premiums based thereon. This, we believe, is fair and just.

To compute the plaintiff's average weekly wage in the instant case from a consideration of the fact that he had an artificial maximum of $1680 placed on his earnings because he was retired and drawing Social Security benefits, would not only produce results unfair to the employee but would ignore the well established principle that an injured employee's average weekly wage must be computed from his *actual* earnings in the employment in which he is injured rather than his earning capacity. *Liles v. Electric Co., supra; Barnhardt v. Cab Co., supra; Joyner v. Oil Co.,* 266 N.C. 519, 146 S.E. 2d 447 (1966) ; *Lovette v. Manufacturing Co.,* 262 N.C. 288, 136 S.E. 2d 685 (1964). We hold that the evidence supports the Commission's finding and conclusion that its use of the second prescribed method set out in the statute in computing the plaintiff's average weekly wage produced results "fair and just to both sides." The Commission's findings and conclusions adequately support the award. The opinion and award of the North Carolina Industrial Commission dated 17 December 1970 is affirmed.

Affirmed.

Judges BROCK and MORRIS concur.