McANELLY v. WILSON PALLET AND CRATE CO.

[120 N.C. App. 127 (1995)]

DAVID GEORGE McANELLY, Employee, Plaintiff v. WILSON PALLET AND CRATE COMPANY, Employer; and AETNA CASUALTY AND SURETY COMPANY, Carrier, Defendants

No. 9410IC318

(Filed 5 September 1995)

1. **Workers' Compensation § 118 (NCI4th)— two automobile accidents—injury arising from second accident—sufficiency of evidence**

    The record contained competent evidence to support the Industrial Commission's finding that plaintiff's disability arose from a 17 November 1989 job-related automobile accident instead of an 18 October 1989 accident where the evidence tended to show that plaintiff had a history of hip problems and had a hip prosthesis; after the first accident plaintiff had some tenderness in the hip area and consulted his doctor, but the discomfort did not interfere with his ability to perform his regular work duties; the impact of the second accident caused plaintiff's knee to be jammed into the dashboard and caused such excruciating pain that plaintiff could not move; he was taken by ambulance to the hospital where he stayed for a month; plaintiff's pain was attributable to a separation of the parts of his prosthesis; and defendant had not reached maximum medical improvement and had been unable to return to work.

    **Am Jur 2d, Workers' Compensation §§ 317, 593.**

    **Sufficiency of proof that musculoskeletal condition resulted from accident or incident in suit rather than from pre-existing condition. 2 ALR3d 290.**

2. **Workers' Compensation § 252 (NCI4th)— plaintiff's temporary total disability—sufficiency of evidence**

    The evidence was sufficient to support the Industrial Commission's finding that plaintiff was temporarily totally disabled as a result of his injury arising out of and in the course of his employment where two doctors offered medical testimony with regard to plaintiff's inability to work.

    **Am Jur 2d, Workers' Compensation §§ 381, 382, 593.**

McANELLY v. WILSON PALLET AND CRATE CO.

[120 N.C. App. 127 (1995)]

3. **Workers' Compensation § 263 (NCI4th)— sole proprietor—business not profitable—basis for award of compensation**

Where plaintiff lawfully elected to be treated as any other employee of his company under the sole proprietor provision of N.C.G.S. § 97-2, the Industrial Commission could not properly base its award for compensation on whether the employer showed a profit, but should instead have based its award on the wages paid to the employee.

**Am Jur 2d, Workers' Compensation §§ 418, 425.**

Appeal by plaintiff and cross-notice of appeal by defendants from the Opinion and Award entered 22 December 1993 by the North Carolina Industrial Commission. Heard in the Court of Appeals 6 April 1995.

*Lee, Reece & Weaver, by Cyrus F. Lee and Rachel V. Lee, for plaintiff-appellant/appellee.*

*Ward and Smith, P.A., by William Joseph Austin, Jr., for defendant-appellants/appellees.*

McGEE, Judge.

Plaintiff David McAnelly owned and operated the Wilson Pallet and Crate Company as a sole proprietorship. Plaintiff was actively engaged in the operation of the business, performing managerial and administrative duties as well as driving a forklift, loading trucks, operating the saw, assembling pallets, and making deliveries. Pursuant to N.C. Gen. Stat. § 97-2(2) (1991), plaintiff elected to include himself as an employee under the workers' compensation coverage for the business.

Plaintiff was injured 17 November 1989 in a job-related motor vehicle accident which gave rise to this workers' compensation claim. At a pre-trial conference the parties stipulated to the following:

1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.

2. The employer-employee relationship existed between plaintiff and defendant-employer.

3. Aetna was the compensation carrier on the risk.

McANELLY v. WILSON PALLET AND CRATE CO.

[120 N.C. App. 127 (1995)]

4. On 17 November 1989 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.

A hearing was held 8 May 1991 before Deputy Commissioner Tamara R. Nance. Based on the above stipulations and several findings of fact, including a finding that at the time of plaintiff's injury he was earning an average weekly wage of $573.07, the Deputy Commissioner concluded plaintiff was entitled to "temporary total disability benefits at the maximum compensation rate of $376.00 per week, from 17 November 1989 to the present, and until further order of the Industrial Commission."

Defendants gave notice of appeal and application for review to the North Carolina Industrial Commission. A hearing was held 27 April 1993 at which the Full Commission adopted the stipulations entered into by the parties, and indicated it would take testimony on the remaining issues of plaintiff's average weekly wage and the causally related compensable consequences of the injury of 17 November 1989. At the conclusion of the hearing, the Full Commission made no finding of fact regarding plaintiff's average weekly wage, but found that "[t]he claimant, a sole proprietor, did not earn a net profit during the 52 weeks preceding his injury." Based upon this and other findings of fact, the Full Commission concluded "plaintiff is entitled to temporary total disability benefits payable at the minimum rate of $30.00 per week, from the date of the injury until further orders of the Commission." The Commission modified the Deputy Commissioner's award from $376.00 to $30.00 per week, and both plaintiff and defendants appeal.

Defendants raise two issues and plaintiff raises one issue on appeal. The standard of review for this Court in a worker's compensation claim directs that "[t]he findings of fact by the Industrial Commission are conclusive on appeal, if there is any competent evidence to support them, and even if there is evidence that would support contrary findings. Conclusions of law based on these findings, however, are subject to review by the appellate courts." *Richards v. Town of Valdese*, 92 N.C. App. 222, 225, 374 S.E.2d 116, 118 (1988), *disc. review denied*, 324 N.C. 337, 378 S.E.2d 799 (1989) (citations omitted).

I.

[1] Defendants contend plaintiff failed to carry his burden of proof as to his disability from the 17 November 1989 accident. We disagree.

Defendants argue the evidence presented shows plaintiff has a history of hip problems and has had a hip prosthesis for several years. They point out plaintiff was involved in another automobile accident on 18 October 1989, approximately one month before the accident giving rise to the present claim, and suggest the October accident is the cause of plaintiff's disability. However, it is well established that while evidence might support contrary findings of fact, if there is competent evidence to support a finding of fact of the Industrial Commission, such finding is conclusive on appeal. *See Mayo v. City of Washington*, 51 N.C. App. 402, 276 S.E.2d 747 (1981).

Both the Deputy Commissioner and the Full Commission made the following findings of fact:

4. On 18 October 1989 plaintiff was involved in an automobile accident in a parking lot. Following this accident plaintiff experienced some tenderness over the trochanteric area of the right hip, which prompted him to return to Dr. Abda's office to have it checked out. On 20 October 1989 he saw Dr. Friedrich, Dr. Abda's partner. Dr. Friedrich noted broken trochanteric wires but did not feel that the accident was the cause of the fractured wires. While the condition of the hip prosthesis was not good on 20 October 1989, Dr. Friedrich did not believe that the broken trochanteric wires were affecting the stability of the hip. Overall, aside from some vision problems which affected plaintiff's ability to drive a motor vehicle, the accident on 18 October 1989 did not interfere with plaintiff's ability to perform his regular work duties.

5. On 17 November 1989, plaintiff was in another motor vehicle accident arising out of and in the course of his employment with defendant-employer. The impact caused plaintiff's right knee to be jammed into the dashboard and caused plaintiff to experience such excruciating hip and knee pain that he could not move. He was taken by ambulance to the Wilson Memorial Hospital Emergency Room, where he came under the care of Dr. Vanden Bosch. Dr. Vanden Bosch noted bleeding in the hip joint and extreme discomfort with movement of the hip in any direction. Plaintiff was hospitalized from the date of injury to 20 December 1989 for symptomatic treatment, then referred to Dr. Callahan at Duke. Surgery was recommended, but due to lack of funds plaintiff had to wait until August 1990 for Medicaid to pay for the surgery.

6. On 27 June 1990, plaintiff came under the care of Dr. Griffin, a specialist in joint replacement. Plaintiff presented with excruciating groin pain and considerable mid-thigh pain attributable to a non-union of the trochanter and a loose acetabular and femoral component. Plaintiff underwent two hip replacements by Dr. Griffin on 21 August 1990 and 12 June 1991. As of the end of July 1991, plaintiff had not yet reached maximum medical improvement and was not bearing weight on his right leg.

7. Plaintiff has been unable to work and earn any wages since the injury on 17 November 1989. He tried selling safety products strictly on commission, but found the pain intolerable and was unable to earn enough to cover his expenses.

Plaintiff testified he had some soreness after the 18 October accident, but after the soreness went away he resumed his regular work activities. The record also shows plaintiff was transported by ambulance from the scene of the 17 November accident to Wilson Memorial Hospital where he remained for more than a month. Dr. Vanden Bosch, who treated plaintiff after the November accident testified: "I believe that again—that the accident was sufficient force to aggravate or cause the loosening of his hip components, therefore causing the pain in this experience, and therefore caused his inability to work or be gainfully employed." The record contains competent evidence to support the Full Commission's finding that plaintiff's disability arose from the 17 November 1989 accident.

II.

[2]  Defendants contend the Industrial Commission erred in its finding that the plaintiff was totally disabled as a result of the injury on 17 November 1989, and also in its conclusion and award of continuing temporary total disability benefits following that date. We disagree.

In support of their contention, defendants argue that according to the testimony of Dr. Griffin, plaintiff could resume normal duties as of August 26, 1991 and, therefore, continued disability payments after that date are improper. However, as we noted previously, the Commission's findings of fact are conclusive on appeal if supported by competent evidence "even if there is evidence that would support contrary findings." *Richards*, 92 N.C. App. at 225, 374 S.E.2d at 118. Moreover, "[i]t is not for a reviewing court . . . to weigh the evidence before the Industrial Commission in a workmen's compensation case.

By authority of G.S. 97-86 the Commission is the sole judge of the credibility and weight to be accorded to the evidence and testimony before it." *Click v. Freight Carriers*, 300 N.C. 164, 166, 265 S.E.2d 389, 390 (1980).

Responding to an inquiry as to plaintiff's prognosis, Dr. Vanden Bosch, the physician in charge of plaintiff's care immediately following the November accident testified:

> If his—if he has successful revision arthroplasty performed this week or next week or have—has had it done already, all of the real hope for that is to relieve the pain. He's certainly going to have to—he's still a young man. He's going to have to be very careful what he does. He's certainly not going to be able to do any hard labor, lifting, or long walking. He's got to take it real easy on that hip for the rest of his life, because he's—there's not going to be that many revisions that can be done anymore. He's very fortunate one can still be done.

In response to the question of whether plaintiff is totally disabled, Dr. Griffin, who performed the most recent surgery on plaintiff, stated:

> The Witness: At the time I saw him at the end of the [sic] July he was not—I was not allowing him to put weight on the right leg and—but he was out of pain, you know, there's a lot of different ways to earn wages; so that's why they come up with a partial disability, I guess—
>
> Mr. Lee: But—
>
> The Witness: I would—if he has a specific —and I guess he could sit in a chair and stuff envelopes if he wanted to, but that's—

We conclude the Commission's finding of fact regarding plaintiff's total disability is supported by competent evidence and thus, the Commission's conclusion that plaintiff is entitled to temporary total disability benefits is proper.

### III.

[3] Plaintiff contends the Full Commission erroneously modified the Deputy Commissioner's Opinion and Award from $376.00 per week to $30.00 per week. We agree.

Plaintiff elected to provide workers' compensation coverage for himself as an employee pursuant to N.C. Gen. Stat. § 97-2(2) (1991) which provides:

McANELLY v. WILSON PALLET AND CRATE CO.

[120 N.C. App. 127 (1995)]

Any sole proprietor or partner of a business whose employees are eligible for benefits under this Article may elect to be included as an employee under the workers' compensation coverage of such business if he is actively engaged in the operation of the business and if the insurer is notified of his election to be so included. Any such sole proprietor or partner shall, upon such election, be entitled to employee benefits and be subject to employee responsibilities prescribed in this Article.

This provision clearly contemplates that a sole proprietor who elects to be included as an employee in compliance with the statute will be treated as an employee under other provisions. As such, plaintiff is entitled to have his average weekly wages determined like any other employee.

G.S. § 97-2(5) provides four methods of determining average weekly wages:

[1] "Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, . . . divided by 52; but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.

[2] Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained.

[3] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

[4] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

A review of the cases interpreting G.S. § 97-2 provides guidance regarding the choice of method for determining average weekly wages under the statute. In *Liles v. Electric Co.*, 244 N.C. 653, 657-58, 94 S.E.2d 790, 794 (1956), our Supreme Court said, "If the employee has worked in such employment during the period of fifty-two weeks immediately preceding the day of injury, the prescribed (first) method is to divide his total earnings during that period by fifty-two." The Court went on to find this first method inapplicable because the employee had not been employed for fifty-two weeks prior to his injury. The Court then considered the second method, which the Commission had rejected after finding that the results obtained would be unfair or unjust. Next, the Court examined the third method, and determined that there was "no factual basis for its application." *Id.* at 658, 94 S.E.2d at 794. Finally, after analyzing all of the preceding methods, the Court considered the "catch-all" provision to be used "where for exceptional reasons the foregoing would be unfair." *Id.* The Court noted that "[t]his provision, while it prescribes no precise method for computing 'average weekly wages,' sets up a standard to which results fair and just to both parties must be related." *Id.* After observing that the dominant intent of G.S. § 97-2 is that results that are fair and just to both parties be reached, the Supreme Court explained:

> The words "fair and just" may not be considered generalities, variable according to the predilections of the individuals who from time to time compose the Commission. These words must be related to the standard set up by the statute. Results fair and just, within the meaning of G.S. 97-2, consist of such "average weekly wages" as will most nearly approximate the amount which the injured employee *would be earning* were it not for the injury, in the employment in which he was working at the time of his injury.

*Id.* at 660, 94 S.E.2d at 796.

Subsequent cases continued to apply the analysis used in *Liles*. In *Wallace v. Music Shop*, 11 N.C. App. 328, 181 S.E.2d 237 (1971), this Court rejected defendant's argument that the Industrial Commission

should have computed average weekly wages under the "exceptional reasons" provision. The Court found the first method inapplicable to the facts of the case, and noted "[t]he fourth prescribed method may not be used unless there has been a finding that use of the second method would produce results unfair and unjust to either the employee or employer." *Id.* at 331, 181 S.E.2d at 239. More recently, in *Postell v. B&D Construction Co.*, 105 N.C. App. 1, 411 S.E.2d 413, *disc. review denied*, 331 N.C. 286, 417 S.E.2d 253 (1992), this Court upheld the determination of average weekly wages under the fourth provision only after concluding that there was competent evidence to support the Commission's findings that the preceding three methods were either inapplicable or would lead to results that were unfair and unjust. *See also Holloway v. T.A. Mebane, Inc.*, 111 N.C. App. 194, 431 S.E.2d 882 (1993) (upholding a determination of average weekly wages under the fourth method where the Commission found that the first two methods would be unfair and unjust, and that it would not be possible at all under the third method).

In this case the Deputy Commissioner found that "[w]hile plaintiff retained significant impairment to his hip prior to the injury of 17 November 1989, he was nevertheless capable of performing heavy labor and was earning an average weekly wage of $573.07." This figure was determined using the first method prescribed by the statute. We find in the record competent evidence to support the Deputy Commissioner's finding, including Wilson Pallet and Crate Company's federal and state quarterly wage reports indicating wages paid to plaintiff, the employer's payroll record showing plaintiff's wages, and copies of checks written on the employer's account to plaintiff and his landlord for the period January 1989 through November 1989. The Full Commission made no finding of fact as to average weekly wages, and instead, replaced the Deputy Commissioner's finding with "[t]he claimant, a sole proprietor, did not earn a net profit during the 52 weeks preceding his injury." Based on that finding, the Full Commission modified the award to a payment at the minimum rate of $30.00 per week.

The Full Commission's determination that plaintiff is entitled to $30.00 per week is a conclusion of law that is fully reviewable by this Court. *See Richards*, 92 N.C. App. 222, 374 S.E.2d 116. We find nothing in the statute defining average weekly wages nor in the cases interpreting that statute which warrants a conclusion that plaintiff is entitled to payment at the minimum rate of $30.00 per week based on a finding that his business failed to show a net profit for the fifty-two

weeks preceding his injury. Under G.S. § 97-2, average weekly wages must be related to an employee's earnings, not to his earning capacity. *Liles*, 244 N.C. at 657, 94 S.E.2d at 794. "[T]he profit or loss of [a] business may not necessarily reflect the value of the plaintiff's services to it." *York v. Unionville Volunteer Fire Dept.*, 58 N.C. App. 591, 593, 293 S.E.2d 812, 814 (1982). Moreover, plaintiff lawfully elected to be treated as any other employee of Wilson Pallet and Crate Company under the sole proprietor provision of the statute. The Commission would not base their award for any other employee on whether or not the employer showed a profit, rather than on the wages paid to the employee.

While it appears there is sufficient evidence to support Deputy Commissioner Nance's finding of fact regarding plaintiff's average weekly wage, we recognize that it is the province of the Full Commission to make such a determination. We hold it was error for the Full Commission to determine the amount of the award based on the net profits of the employer. Therefore, we reverse the award of the Full Commission and remand for further consideration, including a determination of plaintiff's average weekly wage consistent with the guidelines herein expressed, and the entry of an appropriate award based on that finding.

Affirmed in part; reversed in part and remanded.

Judges JOHNSON and COZORT concur.