* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission modifies in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On February 26, 2003, plaintiff began working with defendant-employer as a CBS paraprofessional.
2. Plaintiff was not employed with defendant-employer for 52 weeks prior to the date of her work-related injury, which occurred on September 24, 2003.
3. In 2003, plaintiff worked for defendant-employer on February 26, March 4, 6, 8, 11, 12, 13, 15, 18, 24, 25, April 14, 15, 22, 24, 26, 29, May 6, 8, 10, 12, 13, 14, 15, 17, 19, 20, 21, 22, 23, 24, 27, 29, June 4, 5, 10, 11, 12, 17, 18, 19, 30, July 2, 3, 8, 9, 10, 12, August 5, 7, and September 16, 17, 23, and 24.
4. Jonathan Wright and John A. Burke were both employed by defendant-employer as CBS paraprofessionals during the calendar year immediately preceding plaintiff's date of hire.
5. Key Risk Management Services, Inc., was the carrier on the risk for defendant-employer on the date of plaintiff's injury.
6. Defendants accepted this claim on a Form 60 on November 4, 2003.
7. The average weekly wage as set out by defendants on the Form 22 dated October 3, 2003 signed by Katherine Brock, was calculated by dividing plaintiff's gross income with defendant-employer during 2003 by the number of hours defendants allege plaintiff worked during that time period and multiplying the quotient by seven days.
8. The parties stipulated to the following documents at the hearing before the Deputy Commissioner:
 a) Pre-Trial Agreement signed by the parties;
 b) Plaintiff's medical records;
 c) Comp Payments Report dated June 22, 2004, showing temporary total disability payments made by defendant-carrier to plaintiff from October 2, 2003 to June 16, 2004;
 d) E-mail dated October 20, 2003, from Amy L. Palmieri of defendant-employer to Denise Natale of Saguaro Management Accounting Services, Inc. regarding "J. Smith";
 e) Plaintiff's Pay Period Report dated December 10, 2004, showing paychecks received from Triumph from May 1, 2004, to December 10, 2004, together with supporting timesheets;
 f) Letter on defendant-employer's letterhead dated September 12, 2003, from Amy L. Palmieri to Mr. Hendricks regarding Jacqueline Smith's employment with defendant-employer; and
 g) Spreadsheet providing more details to the Form 22.
9. Plaintiff's Exhibits A-D were also admitted into the record.
10. The issues before the Full Commission are which method is proper for the calculation of plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5), and whether defendants are entitled to a credit for the amount of overpayment of temporary total disability benefits paid to plaintiff.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on September 26, 1965. Plaintiff began working for defendant-employer in February 2003 as a mentor for at-risk children or children with mental illnesses. She generally worked with children ages six to 12 years old, and her activities with children included taking them to parks or various social settings. For the majority of plaintiff's employment prior to the date of her injury, she was assigned one case and was authorized to work 10 hours per week at a rate of pay of $ 9.50 per hour. Plaintiff averaged 6.9 hours per week.
2. Defendant-employer typically hired a paraprofessional to work with one client, and, in time, the paraprofessional was eventually assigned more clients and more hours of work. However, since the number of hours available depends on the availability and need of the children to be served and since any child's participation in the program can end at any time, defendant-employer could not guarantee a set number of hours to its employees.
3. In August 2003, plaintiff took several weeks off from work due to personal transportation issues. She returned at the beginning of September 2003 and was assigned three cases. Plaintiff was authorized to work ten hours per case, per week. Plaintiff met with all three children as of September 24, 2003. As evidenced by the "Form 22 Details" document stipulated into evidence by the parties, plaintiff worked a total of 5.5 hours in September 2003, which includes the time she met with all three of her newly assigned cases.
4. On September 24, 2003, plaintiff sustained a compensable injury by accident to her right ankle when she tripped outside the home of a child to which she had been assigned. Defendants accepted the claim as compensable and paid for all medical treatment to the date of the Deputy Commissioner's hearing. Defendants also paid temporary total disability benefits from September 25, 2003 through September 15, 2004, based on an average weekly wage of $ 110.04, which yields a compensation rate of $ 73.36 per week.
5. Plaintiff received the majority of her medical treatment from Dr. Mark A. Curzan of Cary Orthopedics. On September 26, 2003, Dr. Curzan performed an open reduction and internal fixation of a trimalleolar fracture of plaintiff's right ankle.
6. On August 25, 2004, plaintiff underwent an independent medical examination with Dr. David Boone at Raleigh Orthopedic Clinic. Following a physical examination and review of x-rays of plaintiff's right ankle, which revealed good internal fixation and bone healing, Dr. Boone opined that plaintiff could return to work at full-duty.
7. On September 21, 2004, plaintiff underwent a functional capacity evaluation (FCE) to determine her ability to stand for extended periods of time. The results of the FCE revealed sub-maximal effort. On September 28, 2004, Dr. Curzan released plaintiff to return to work on a regular basis, based on the results of the FCE. Dr. Curzan assigned plaintiff a 15% permanent partial disability rating to her right ankle on March 1, 2005.
8. Prior to the date of her injury, plaintiff earned total gross wages of $ 1,372.78. During the 211 days from February 6, 2003 through September 24, 2003, plaintiff missed periods of work in excess of seven days that totaled 91 days.
9. In N.C. Gen. Stat. § 97-2(5), the North Carolina Workers' Compensation Act outlines five methods of calculating a plaintiff's average weekly wage. The first two methods cannot be used in this case because plaintiff's employment prior to the injury extended over a period of fewer than 52 weeks. Based on application of the third calculation method, pursuant to the Form 22 and "Form 22 Details" document stipulated into evidence, plaintiff has an average weekly wage of $ 80.08, which yields a compensation rate of $ 53.40 per week.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 24, 2003, plaintiff sustained an admittedly compensable injury by accident to her ankle. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff failed to prove that she is entitled to additional temporary total disability benefits based on a different average weekly wage. N.C. Gen. Stat. § 97-29.
3. N.C. Gen. Stat. § 97-2(5) sets forth five methods, listed in the order of preference, to determine a claimant's average weekly wage.McAninch v. Buncome Cty. Schools, 347 N.C. 126, 489 S.E.2d 375 (1997). The first two methods require that plaintiff's employment prior to the injury extend over a period of 52 weeks. Because plaintiff's employment in the instant case extended over a period of fewer than 52 weeks, the third method of calculation is appropriate, unless it results in unjust results. Wallace v. Music Shop, II, Inc., 11 N.C. App. 328,181 S.E.2d 237 (1971).
4. In the present case, plaintiff failed to prove that calculation of her average weekly wage based on the actual wages earned prior to her date of injury would be unfair or that it would be more appropriate to base her average weekly wage on an anticipated increase in wages. There is no evidence of record that plaintiff's anticipated increase in wages would be certain or that future advancements were expected. Therefore, an average weekly wage based on anticipated future wages is not appropriate. Early v. WH Basmight Co., Inc. 214 NC 103,198 S.E. 2d 577 (1938). Plaintiff's average weekly wage shall be calculated using the third method, which yields an average weekly wage of $ 80.08 and a compensation rate of $ 53.40 per week. N.C. Gen. Stat. §97-2(5).
5. The Commission has discretion to grant or deny a credit to defendants. Shockley v. Cairn Studios Ltd., 149 N.C.App. 961,563 S.E.2d 207 (2002). In its discretion, the Commission declines to award a credit to the defendants for the overpayment of benefits. N.C. Gen. Stat. § 97-42.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional disability benefits based on a different average weekly wage calculation is hereby DENIED.
2. Defendants are not entitled to a credit for the overpayment of temporary total disability benefits paid to plaintiff.
3. Defendants shall bear the costs.
This 14th day of December, 2006.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ PAMELA T. YOUNG COMMISSIONER