* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
3. At the time of each injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and there was an employer-employee relationship between the parties, with defendant-employer insured by Zenith Insurance Company.
4. In a Form 60 filed on April 24, 2003, defendants admit that on March 25, 2003, plaintiff sustained an injury by accident to his lower back arising out of and in the course of his employment (I.C. No. 427386).
5. In a Form 60 filed on May 25, 2004, defendants admit that on April 14, 2004, plaintiff sustained an injury by accident to his left knee arising out of and in the course of his employment (I.C. No. 317543).
6. The Deputy Commissioner entered the following documents into evidence by stipulation:
 a. The Pre-Trial Agreement, marked as stipulated exhibit 1.
 b. Medical records pertaining to the March 25, 2003 back injury, collectively paginated 1-41 and marked as stipulated exhibit 2.
 c. Industrial Commission forms filed pertaining to the March 25, 2003 back injury, collectively paginated 1-7 and marked as stipulated exhibit 3. *Page 3 
 d. Medical records pertaining to the April 14, 2004 knee, collectively paginated 1-32 and marked as stipulated exhibit 4.
 e. Industrial Commission forms filed pertaining to the April 14, 2004 knee injury, collectively paginated 1-10 and marked as stipulated exhibit 5.
 f. Motions, responses, and proposed orders held in abeyance prior to hearing collectively paginated 1-42 and marked as stipulated exhibit 6.
7. Defendants' exhibits 1, 2, and 3 were entered into evidence at the Deputy Commissioner's hearing.
8. The issues before the Full Commission are whether plaintiff is entitled to compensation and medical treatment as a result of his March 25, 2003 and April 14, 2004 injuries, and what is plaintiff's average weekly wage and compensation rate.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 43 years old. Plaintiff is a high-school graduate and attended Mitchell Community College for one year. Plaintiff has a commercial driver's license.
2. On November 9, 2002, plaintiff began working as a truck driver for defendant-employer. Plaintiff delivered and manually unloaded wood products.
3. On March 25, 2003, plaintiff was unloading his truck at a Lowe's Home Improvement in Georgia. The delivery included packages of stair treads as well as bundles of chair rails and paneling. Each item had to be bar-coded by Lowe's personnel as it was unloaded, *Page 4 
requiring plaintiff to lift each bundle to chest height. The bundles varied in weight from 40 to 100 pounds. As plaintiff was lifting a bundle, he felt a sudden onset of pain in his low back. Plaintiff reported the injury to Margie Harrold, his supervisor, who instructed him to either seek treatment in Georgia or return to North Carolina for treatment.
4. Plaintiff returned to North Carolina and saw Dr. William Graham on March 28, 2003, with complaints of back pain radiating into the hips, buttocks, and leg. On April 24, 2003, plaintiff underwent a lumbar MRI which revealed a small herniated disc at L4-5 with encroachment on the L4 nerve root. Based on the MRI results, Dr. Graham referred plaintiff to Dr. Michael Dockery at Miller Orthopaedic Clinic for a surgical consultation.
5. On September 23, 2003, plaintiff underwent a left L4 nerve root block and epidural steroid injection. The block gave plaintiff relief for approximately one month. Dr. Dockery felt that depending on the outcome of the block procedure, plaintiff may be a surgical candidate.
6. On October 15, 2003, Dr. Craig Brigham at Miller Orthopaedic Clinic evaluated plaintiff. Dr. Brigham was of the opinion that plaintiff had a lumbar sprain, no impairment, and no need for surgery.
7. On October 16, 2003, plaintiff returned to work for defendant-employer with no restrictions.
8. Defendants admitted in a Form 60 filed on April 24, 2003 that plaintiff sustained an injury by accident to his low back arising out of and in the course of his employment on March 25, 2003. While plaintiff was out of work following the March 25, 2003 back injury, plaintiff received temporary total disability compensation at a rate of $333.35 per week. *Page 5 
9. The last date plaintiff received indemnity or medical compensation as a result of his March 25, 2003 injury was on or after October 21, 2003. Plaintiff filed a Form 18 on April 26, 2005 in which he requested additional medical treatment stemming from the March 25, 2003 injury.
10. On April 14, 2004, plaintiff made a delivery to Lowe's Home Improvement in Wilmington, North Carolina. Plaintiff was unloading "the worst loading of a trailer [he had] ever seen" and had to climb approximately eight feet off the floor of the trailer to unload it. As plaintiff stepped down to the trailer floor, which was wet from rain, he stepped on some pieces of lumber and his foot slipped, twisting his left knee. Plaintiff finished unloading the truck and continued to work in pain until May 3, 2004.
11. Defendants admitted in a Form 60 filed on May 25, 2004 that plaintiff sustained an injury by accident to his knee arising out of and in the course of his employment on April 14, 2004.
12. Defendants sent plaintiff to Dr. Michael King on May 3, 2004. Dr. King diagnosed plaintiff with a meniscus tear, removed plaintiff from all work, and told plaintiff that he was in need of knee surgery.
13. Defendants then sent plaintiff to Dr. Dockery on May 10, 2004. Dr. Dockery disagreed with Dr. King regarding the need for surgery and felt that plaintiff could work with restrictions.
14. Despite being taken out of work by Dr. King, on May 26, 2004, plaintiff returned to work in a "bar coder" position at defendant-employer. Although defendants allege the bar coder position was a light-duty job, the job duties entailed constant standing and repetitive heavy lifting of up to 60 pounds and violated the restrictions imposed by Dr. Dockery. *Page 6 
15. The bar coder position required plaintiff to complete duties that were beyond his medical restrictions. He was forced to accept this employment out of financial necessity; however, the Commission finds that the job was not within his restrictions, was not indicative of his wage earning capacity and did not constitute suitable employment.
16. Plaintiff performed the bar coder job until April 19, 2005, when he was terminated from employment pursuant to a policy enacted by defendant-employer, which limited the availability of light-duty jobs to 60 days. Plaintiff has not received any benefits since his termination, and knee surgery has not been performed.
17. Dr. Dockery eventually recommended that plaintiff undergo a repeat MRI of the left knee, with diagnostic surgery possibly to follow. On May 17, 2005, defendants filed a motion to compel plaintiff to undergo this surgical procedure. Plaintiff wanted Dr. King to perform the procedure. Plaintiff did not feel comfortable with Dr. Dockery performing the surgery and testified that Dr. Dockery treated him like "cattle."
18. For 20 years prior to going to work with defendant-employer, plaintiff was self-employed and owned a business, Boger Transportation, with his brother. Boger Transportion transports mobile homes using a truck and an escort car. Plaintiff last earned income from Boger Transportation in 2005, doing some paperwork, occasionally driving the escort car, and once driving the truck. Although plaintiff admitted that he could return to work as an escort driver, the job paid only minimum wage, which is far below plaintiff's pre-injury wage. Plaintiff's sporadic work for Boger Transportation is not indicative of his ability to attain and sustain competitive employment.
19. Certified rehabilitation counselor Melanie Marshall testified that plaintiff could return to suitable employment in the competitive labor market in his current condition, despite *Page 7 
his employment history, his termination from a "light-duty" job, and his current knee condition which requires surgery. The Full Commission gives Ms. Marshall's testimony limited weight.
20. The greater weight of the evidence of record shows that as a result of his March 25, 2003 and April 14, 2004 injuries, plaintiff has been unable to earn any wages in any employment from May 3, 2004, except for the wages earned as a bar coder and in his limited work for Boger Transportation, which were not indicative of his true wage earning capacity. During the period plaintiff has been out of work, defendant-employer did not offer any work to plaintiff which was suitable to his physical restrictions. The bar coder job was unsuitable because it required constant standing and repetitive heavy lifting.
21. The Commission has considered the methods for calculating plaintiff's appropriate average weekly wage in this case as set forth in N.C. Gen. Stat. § 97-2(5) and finds the third method to be appropriate. The first two methods cannot be used in this case because plaintiff's employment prior to the injury extended for a period of less than 52 weeks. The evidence of record shows that plaintiff began working for defendant-employer on November 9, 2002 and worked over a period of 133 days before his injury, a period of 19 weeks. Plaintiff earned a total of $12,742.37 during this period. Based on the application of the third calculation method, plaintiff has an average weekly wage of $670.65 and a corresponding weekly workers' compensation rate of $447.12.
22. While plaintiff was out of work following the March 25, 2003 back injury until he returned to work on October 16, 2003, plaintiff received temporary total disability compensation at a weekly rate of $335.35. Because the correct compensation rate was $447.12, defendants underpaid temporary total disability benefits to plaintiff during this period in the amount of the difference between the two rates or $111.77 per week. *Page 8 
23. This matter was appealed to the Full Commission by defendants from an Opinion and Award awarding benefits and results in the affirmation of that award.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 25, 2003, plaintiff sustained a compensable injury to his back as a result of a specific traumatic incident of the work assigned arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. N.C. Gen. Stat. § 97-2(5) sets forth five methods, listed in order of preference, to determine a claimant's average weekly wage. McAninchv. Buncombe Cty. Schools, 347 N.C. 126, 489 S.E.2d 375 (1997). The first two methods require that plaintiff's employment prior to the injury extend over a period of 52 weeks. The third method applies to employees who worked for less than 52 weeks preceding the injury and calculates their average weekly wage by dividing the actual earnings by the number of weeks worked. Because plaintiff's employment in the instant case extended over a period of fewer than 52 weeks, the third method of calculation is appropriate, provided the results are fair and just to both parties. Wallace v. Music Shop, II, Inc., 11 N.C. App. 328,181 S.E.2d 237 (1971). In this case, the evidence of record shows that plaintiff began working for defendant-employer on November 9, 2002 and worked over a period of 133 days before his injury, or a period of 19 weeks. Plaintiff earned a total of $12,742.37 during this period. This generates an average weekly wage for plaintiff of $670.65 and a corresponding weekly workers' compensation rate of $447.12. This result is fair and just to both *Page 9 
parties and this method of computation is appropriate. The fourth and fifth methods are inappropriate in this case. N.C. Gen. Stat. § 97-2(5).
3. As a result of the March 25, 2003 injury, plaintiff was totally disabled and defendants paid plaintiff temporary total disability compensation at a rate of $335.35 per week from March 25, 2003 until he returned to work on October 16, 2003. Plaintiff is entitled to a lump sum payment of the additional compensation due him for the underpayment of his temporary total disability compensation following the March 25, 2003 back injury until he returned to work on October 16, 2003. N.C. Gen. Stat. § 97-29.
4. The last date plaintiff received indemnity or medical compensation as a result of his March 25, 2003 injury was on or after October 21, 2003. Plaintiff filed a Form 18 on April 26, 2005 in which he requested additional medical treatment for the March 25, 2003 injury. Because plaintiff sought additional medical treatment for his back condition within two years of defendants' last payment of medical or indemnity compensation, subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff has a right to additional medical compensation for the March 25, 2003 injury. N.C. Gen. Stat. §§ 97-25; 97-25.1.
5. On April 14, 2004, plaintiff sustained a compensable injury by accident to his knee arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
6. Defendants admitted the compensability of plaintiff's injury by accident on April 14, 2004 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001). *Page 10 
7. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden of proof then shifts to defendants. Demery v. Perdue Farms, Inc., supra.
8. Regarding plaintiff's work in the bar coder position, an employer may rebut the presumption of continuing disability through evidence "that suitable jobs are available to the employee and that the employee is capable of getting one, taking into account the employee's physical and vocational limitations." Franklin v. Broyhill Furniture Industries,123 N.C. App. 200, 206, 472 S.E.2d 382, 386, cert. denied,344 N.C. 629, 477 S.E.2d 39 (1996). "[M]ere proof of a return to work is insufficient to rebut the . . . presumption," because "capacity to earn is the benchmark test of disability." Kisiah v. W.R. Kisiah Plumbing,124 N.C. App. 72, 81, 476 S.E.2d 434, 439 (1996), disc. reviewdenied, 345 N.C. 343, 483 S.E.2d 169 (1997). A "suitable" job is defined as that which the claimant is capable of performing considering his age, education, *Page 11 
physical limitations, vocational skills, and experience. Burwell v.Winn-Dixie Raleigh, 114 N.C. App. 69, 441 S.E.2d 145 (1994). Given the foregoing, plaintiff's position as a bar coder and his sporadic work for Boger Transportation did not constitute suitable employment sufficient to establish his capacity to earn competitive wages. Id.
9. In the instant case, plaintiff met his initial burden to show that he is temporarily totally disabled until after he has the recommended surgery to his knee. As the result of his compensable injuries, plaintiff was unable due to his compensable injury to return to his regular job or to any other employment. Therefore, plaintiff was temporarily totally disabled and is entitled to receive temporary total disability compensation at a rate of $447.12 per week beginning on May 3, 2004 and continuing, subject to a credit for wages paid to plaintiff for work as a bar coder and for his sporadic work for Boger Transportation. N.C. Gen. Stat. §§ 97-29; 97-42.
10. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injuries on March 25, 2003 and April 14, 2004, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§97-2(19); 97-25.
11. The North Carolina Workers' Compensation Acts gives the Industrial Commission the power to "order such further [medical] treatments as may in the discretion of the Commission be necessary," with the cost to be borne by the defendant. Furthermore, the Industrial Commission may "at any time . . . order a change in treatment and designate other treatment suggested by the injured employee. . . ." N.C. Gen. Stat. § 97-25. Based upon plaintiff's lack of confidence in treatment by Dr. Dockery, plaintiff is entitled to treatment by *Page 12 
Dr. King instead of Dr. Dockery. Plaintiff is also entitled to an evaluation of his current back condition by an orthopedist or neurosurgeon.
12. If any installment of compensation is not paid within 14 days after it becomes due, the unpaid installment is subject to a 10% late payment penalty pursuant to N.C. Gen. Stat. § 97-18(g).
13. In any case where an order is issued either granting or denying an award to plaintiff and where there is an appeal resulting in an ultimate award to plaintiff, defendants shall pay interest on the final award or unpaid portion thereof from the date of the initial hearing on the claim, until paid at the legal rate of interest. The interest shall not be a part of or in any way increase attorney's fees, but shall be paid in full to plaintiff. N.C. Gen. Stat. § 97-86.2.
14. Pursuant to N.C. Gen. Stat. § 97-88, the Full Commission has discretion to award reasonable attorney's fees for appeals brought by insurers when the Commission orders the insurer to make or continue payments of compensation to the injured employee. Id.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff a lump sum payment of the additional compensation due plaintiff for the underpayment of his weekly compensation rate following the March 25, 2003 injury until he returned to work on October 16, 2003.
2. Subject to the attorney's fee approved below, defendants shall pay plaintiff temporary total disability compensation at a rate of $447.12 per week beginning on May 3, 2004 *Page 13 
and continuing until plaintiff returns to work or until further order of the Commission, subject to a credit for wages paid to plaintiff for work as a bar coder and for his sporadic work for Boger Transportation. Any amounts that have accrued shall be paid to plaintiff in a lump sum.
3. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his injuries by accident on March 25, 2003 and April 14, 2004, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. This treatment includes, but is not limited to, further evaluation, treatment, and surgery as directed by Dr. Graham and Dr. King. The approved treatment also includes an evaluation of plaintiff's current back condition by an orthopedist or neurosurgeon agreed upon by the parties. In the event that the parties are unable to agree, they may request the assistance of the Industrial Commission Nurses Section to facilitate the selection of a physician.
4. A reasonable attorney's fee of 25% of the compensation awarded in paragraphs 1 and 2 is hereby approved for plaintiff's counsel. The accrued portions of this fee shall be deducted from the accrued benefits and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
5. Defendants shall pay a 10% late payment penalty on any past due compensation pursuant to N.C. Gen. Stat. § 97-18(g).
6. Defendants shall pay plaintiff interest on the final award or unpaid portion thereof from the date of the initial hearing on the claim until paid, at the legal rate of interest under N.C. Gen. Stat. § 24-1. N.C. Gen. Stat. § 97-86.2. *Page 14 
7. Plaintiff's counsel shall submit an affidavit to Commissioner Mavretic showing the hours spent on the appeal to the Full Commission. Plaintiff is entitled to a reasonable attorney's fee assessed against defendants pursuant to N.C. Gen. Stat. § 97-88.
8. Defendants shall pay the costs.
This 12th day of July, 2007.
 S/______________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ DANNY LEE McDONALD COMMISSIONER *Page 1